UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STUART SANDWEISS *et al.*,

            Plaintiffs,            Case No. 16-cv-12114
                                              Hon. Matthew F. Leitman
v.

SPIRIT AIRLINES, INC.,

            Defendant.
_____/

**<u>ORDER (1) DENYING DEFENDANT'S PETITION FOR SANCTIONS (ECF #32) AND PRIOR REQUEST FOR SANCTIONS (ECF #13), (2) DENYING PLAINTIFFS' MOTION FOR SANCTIONS (ECF #35), (3) DECLINING TO AWARD DEFENDANT ITS COSTS (ECF #33), AND (4) DISMISSING THIS ACTION WITH PREJUDICE</u>**

The handling of this case will never appear in any litigation "best practices" manual. These proceedings involved a substantial amount of unreasonable and/or unhelpful conduct by Plaintiffs Stuart and Valerie Sandweiss, Defendant Spirit Airlines, Inc., and their respective counsel. This conduct, along with case management shortcomings by the Court, contributed to rounds of wasteful litigation.

Both sides have moved for sanctions against each other. Neither deserves such an award. Accordingly, for the reasons explained below, the Court **DENIES** both parties' current requests for sanctions (ECF ## 32, 35), **DECLINES** to grant Spirit its costs (ECF #33), **DENIES** Spirit's prior request for sanctions in its motion to dismiss (ECF #13), and **DISMISSES** this action **WITH PREJUDICE**.

1

# I

## A

In 2010 and 2016, the Sandweisses had bad experiences with Spirit. In 2010, the Sandweisses purchased tickets from Spirit so that two friends could attend their daughter's wedding. (*See* Compl. at ¶31, ECF #1-2 at Pg. ID 20.) According to the Sandweisses, Spirit cancelled their friends' flight due to a pilot's strike and refused to refund the cost of the tickets. (*See id.* at ¶¶ 33-35, ECF #1-2 at Pg. ID 21.) In 2016, Valerie Sandweiss attempted to purchase two tickets from Detroit to New York, and she contends that Spirit unfairly increased the cost of the fare in the middle of the purchase process. (*See id.* at ¶25, ECF #1-2 at Pg. ID 20.)

Stuart Sandweiss ("Sandweiss"), a licensed attorney, decided to sue. Acting as both co-counsel[1] and co-plaintiff (with his wife), Sandweiss filed this action against Spirit in the Wayne County Circuit Court on June 3, 2016. (*See* Compl., ECF #1-2.) But Sandweiss did not just sue on behalf of himself and his wife. Instead, Sandweiss filed a putative class action in which he sought damages on behalf of (1) the "hundreds or thousands of [Spirit customers]" who did not receive a refund as a result of the 2010 pilot strike and (2) the "many thousands of individuals who have been defrauded by [Spirit's] 'bait and switch' price tactics." (*Id.* at ¶¶ 10, 29, ECF

---

[1] Sandweiss' co-counsel in this action is attorney Brian Herschfus.

2

#1-2 at Pg. ID 18, 20.)  However, Sandweiss was not actually seeking to recover on behalf of the classes he purported to represent.  All he really wanted – and what he was willing to "settle[]" for – was "approximately $750" for himself and his wife.  (Sandweiss Omnibus Br., ECF #36 at Pg. ID 862.)

**B**

Spirit removed the action to this Court on June 9, 2016. (*See* ECF #1.)  Spirit contended that removal was proper under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"), because (1) diversity of citizenship existed and (2) the Complaint sought over $5,000,000 in aggregated damages. (*See id.* at Pg. ID 5-12.)  Spirit also filed a motion to dismiss the Complaint. (*See* ECF #3.)

On July 12, 2016, Sandweiss, as counsel, filed a motion to remand the action to the Wayne County Circuit Court (the "Remand Motion"). (*See* ECF #5.)  Sandweiss argued, among other things, that the amount in controversy did not meet CAFA's $5,000,000 threshold for removal because Sandweiss and his wife were willing to "stipulate to individual damages of less than $75,000 and potential class damages of less than $5,000,000." (*Id.* at Pg. ID 167.)  Sandweiss insisted that the Court should sanction Spirit for having removed the action, and he asked the Court to order Spirit to pay the fees that he and his wife incurred related to the Remand Motion. (*See id.* at 172-73.)

But if anyone should have been sanctioned, it was Sandweiss. Years before Sandweiss filed the Remand Motion, the United States Supreme Court had unanimously rejected one of the main arguments he advanced in that motion – that his and his wife's post-remand stipulation to seek less than $75,000 in individual damages and less than $5,000,000 in class damages deprived this Court of subject-matter jurisdiction. *See Standard Fire Insurance Co. v. Knowles*, 568 U.S. 558 (2013). Likewise, long before Sandweiss filed the Remand Motion, the United States Court of Appeals for the Sixth Circuit had held that "a post-removal stipulation reducing the amount in controversy to below the jurisdictional limit does not require remand to state court." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir. 2000). In light of *Knowles* and *Rogers*, Sandweiss did not have a good-faith basis to seek a remand based upon the offer to stipulate to damages below CAFA's amount-in-controversy threshold. The Court could have sanctioned Sandweiss for his frivolous arguments in the Remand Motion, but it did not.

## C

Just before the scheduled hearing on the Remand Motion, the Court met with counsel (including Sandweiss) in chambers and urged them to explore a possible settlement. The parties and the Court then discussed a framework for resolving the dispute under which Spirit would provide the Sandweisses with two vouchers for air

travel on a Spirit route.  After some discussion, the parties agreed to settle the case using the voucher framework.

The parties then placed their agreement on the record.  Spirit's counsel explained that "[t]he settlement consists of Spirit Airlines providing two vouchers for travel anywhere Spirit flies, and [that Spirit would] provide Mr. Sandweiss a [telephone] number he would call to book the reservations." (9/26/16 Hearing Tr., ECF #10 at Pg. ID 273.)  Spirit's counsel further noted that Spirit would "provide for each of the two passengers a free checked bag and a free carry-on bag, so a total of four free bags." (*Id.*)

Spirit's attorney then introduced a new settlement term that had not been raised or accepted during the in-chambers discussions.  Spirit's counsel shared this new term with Sandweiss only moments before the parties went on the record.  The new condition was that the Sandweisses needed to book their flights "within 60 days." (*Id.*)  Adding this new condition without any real warning was not helpful and contributed to the breakdown of trust between the parties.

Sandweiss immediately objected to Spirit's attempt to change the deal that the parties had reached.  He explained that he had a "problem" with the "60-day" requirement because he and his wife would be using the Spirit vouchers, and they would not know within that limited time period when they would be able to travel:

> I guess I would have to – I talked to my wife about this,
> she is the one – *she is the other plaintiff and she is the one*

5

> *who would be traveling with me.* Usually we go away on vacation during the wintertime, we have already booked everything for this winter, so it will be the following winter, and that's why 15 months in advance I can't possibly know when you have children, an elderly father, I can't possibly know what the situation is going to be say for the winter of – fall/winter of 2017 to 2018.

(*Id.* at Pg. ID 276; emphasis added.)

After Sandweiss raised his objection, the Court took a short recess so that Spirit's counsel could contact his client in an attempt to extend the 60-day booking window. Ultimately, Spirit offered to extend the time period for booking to 120 days, and Sandweiss agreed to that requirement. The parties then went back on the record and Spirit's counsel summarized the terms of the settlement:

> The totality of the settlement is as follows: Spirit Airlines will provide two travel vouchers *which will permit Mr. Sandweiss and I assume it's his wife* to travel anywhere that Spirit flies. Secondly – and again, the fees and taxes, if any, are the responsibility of Mr. Sandweiss. Second, the airline will throw in a free checked bag and a free carry-on bag for each of the two passengers. And finally, *Mr. Sandweiss will have 120 days to book the reservation, he then can travel whenever there is a flight*. In other words, he can book in four months and *travel up to a year later*. As long as there is a scheduled flight he can book any flight he wants within that four-month period. That's the totality of the settlement. In exchange, of course, we would get a release of all claims and a dismissal with prejudice.

(*Id.* at Pg. ID 277-78; emphasis added.) Sandweiss, through his attorney Herschfus, agreed that this summary accurately stated the terms of the parties' deal. (*See id.* at Pg. ID 279.)

As Sandweiss later learned, the representation by Spirit's counsel that he could travel "up to a year later" was wrong. Sandweiss discovered that Spirit does not schedule flights "a year" in advance. (*See*, *e.g.*, Spirit website print-outs, ECF #22-2; email from Spirit representative, ECF #25-3 at Pg. ID 559.) The erroneous statement by Spirit's counsel was not helpful and contributed to the erosion of trust between the parties.

## D

Spirit drafted a settlement agreement that memorialized the terms that the parties had placed on the record. The draft made clear that Spirit would provide two vouchers to the Sandweisses and that the Sandweisses, themselves, would use the vouchers for their own travel:

> *Releasors* [defined as the Sandweisses] *must redeem the Vouchers by booking their flight(s)* with Spirit (following the instructions on the vouchers) within 120 days of the execution of this Agreement, or else the Vouchers will permanently expire;
>
> Releasors must call the number provided in the electronic voucher and reference the identification numbers to redeem the Vouchers and *book their flights*;
>
> […..]

> Releasors will be responsible for any taxes and fees associated with *their travel*.

(ECF #13-3 at Pg. ID 327; emphasis added.)

It took Sandweiss a long time to respond to the draft,[2] and when he finally did respond, he did not object to the draft on the ground that it required him and his wife to use the vouchers and do the traveling. Nor did he ask Spirit's counsel to add to the draft a provision that would have permitted him and his wife to transfer the vouchers to other travelers.

By November 21, 2016, the Sandweisses and Spirit had finalized the written settlement agreement, and the Sandweisses signed the agreement that day. (*See* ECF #36-2 at Pg. ID 896.) The final, signed version of the settlement agreement contained the quoted language above which indicated that the Sandweisses, themselves, would use the vouchers and do the traveling. The final settlement

---

[2] Spirit's counsel emailed a copy of the draft settlement agreement to Herschfus and Sandweiss on October 11, 2016. (*See* ECF #13-4 at Pg. ID 340.) Spirit's counsel did not hear back from Herschfus or Sandweiss, so he re-sent them a copy of the draft settlement agreement on October 17, 2016. (*See id.* at Pg. ID 342.) One week later, on October 24, 2016, Spirit's counsel sent the draft a third time to Herschfus and Sandweiss, noting that he had not "heard back from either of [them] about the draft settlement agreement. Please let me know the status." (*Id.* at Pg. ID 344.) According to Sandweiss, he was out of the office due to a death in the family and because he was observing Jewish holidays when Spirit's counsel attempted to contact him, and he thought Herschfus and/or Herschfus' assistant was in communication with Spirit. (*See* Sandweiss Omnibus Br., ECF #36 at Pg. ID 865-66.)

agreement also required the Sandweisses to "cooperate fully and execute any and all documents and to take all additional actions that may be necessary to give full force and effect to the basic terms and intent of the Agreement." (*Id.* at Pg. ID 328.) Among other things, the Sandweisses had to cooperate with Spirit so that Spirit could file "a fully executed stipulation of dismissal with prejudice" of this action "within 5 business days of execution of the [settlement] [a]greement." (*Id.*)

E

On November 28, 2016, Spirit delivered two travel vouchers to the Sandweisses. (*See* Vouchers, ECF #17-3.) The vouchers contained language and provisions that had not been included in, and did not conform to, the parties' final settlement agreement. For instance, while the settlement agreement provided that Spirit would give the Sandweisses a specific telephone number to call to book their travel, the vouchers required the Sandweisses to book their travel only by email. (*See id.* at Pg. ID 442.) And the vouchers restricted the Sandweisses to redeeming the vouchers between 9:00 a.m. and 5:00 p.m. Monday through Friday. (*See id.*) In contrast, the settlement agreement did not include any restriction on the times or days of the week that the Sandweisses could book their travel. Finally, the vouchers provided that their terms and conditions were "subject to change." (*See id.*)

The significance of these non-conforming provisions of the vouchers is open to debate. But this much is not: Spirit's decision to add these new terms to the

9

vouchers was unhelpful and served only to undermine what little trust remained between the parties. The Sandweisses objected to these new terms.

The Sandweisses also objected to another term that Spirit included on the vouchers – a term stating that the vouchers were non-transferable and could be used only for travel by the Sandweisses. (*See id.*) The Sandweisses insisted that they had bargained for, and obtained, the right to transfer the vouchers to other travelers. This objection and assertion was unreasonable. It was clear from the moment the parties placed the settlement on the record that Sandweiss and his wife would be the ones using the vouchers. Indeed, Sandweiss initially objected to the "book within 60 days" condition precisely because he (Sandweiss) was concerned that *he and his wife* may not be able to book within that time frame. (*See* 9/26/16 Hearing Tr., ECF #10 at Pg. ID 276.) And the plain language of the settlement agreement quoted above makes clear that the Sandweisses, themselves, would be using the vouchers.

Based upon their objections to the new terms included in the vouchers, the Sandweisses refused to sign a stipulation for dismissal of this action.

**F**

On December 8, 2016, Spirit filed a motion to dismiss the Complaint and/or to enforce the settlement agreement. (*See* ECF #13.) In that motion, Spirit argued that it had fulfilled its obligations under the settlement agreement – by providing the vouchers – and that the Sandweisses had unreasonably refused to execute the

required stipulated order of dismissal. (*See id.*) Spirit sought sanctions for the Sandweisses' "vexatious and dilatory litigation tactics." (*Id.* at Pg. ID 286.)

Almost immediately upon receipt of Spirit's motion, the Court entered a written Order in which it required the parties and counsel to personally appear for a status conference on December 12, 2016. (*See* ECF #14.) During that conference, Sandweiss said that he was willing to compromise on his and his wife's objections to the conditions in the vouchers requiring him to book by email and restricting the time of day during which he and his wife could book their travel. But he was steadfast that the "transferability" issue was a "deal-breaker." (12/12/16 Hearing Tr., ECF #29 at Pg. ID 597.) Sandweiss explained that transferability was important because he was uncertain when, or if, he and his wife would be able to travel, and he did not want the vouchers to expire unused. (*See id.* at 600-01.)

The Court then made a proposal to the parties. (*See id.* at Pg. ID 624-25.) It suggested that:

- The Court hold the proceedings in abeyance for 90-days;
- During that 90-day "cooling off" period, Sandweiss would determine if he and his wife would be able to use the travel vouchers;
- If Sandweiss and his wife did use the vouchers during that time, Sandweiss would then sign the stipulated order of dismissal, and this action would be dismissed; and

- If Sandweiss decided that he and his wife could not travel and wished to transfer the vouchers, the Court would resume the motion practice at that time.

(*See id.*)

Sandweiss agreed to the Court's proposal. (*See id.*) Spirit, however, had a "significant problem with the proposal," and it refused to consent to the 90-day cooling off period. (*Id.* at Pg. ID 626.) Spirit explained that it objected to the Court's proposal because it had come to believe that Sandweiss would never be satisfied and that the case would never end unless the Court granted its motion to dismiss. (*See id.* at Pg. ID 626-30.) Spirit also objected to the Court's proposal because it believed that Sandweiss' contention that the vouchers should be transferable was groundless. (*See id.* at 629-30.)

Spirit's insistence upon proceeding with its motion was not the most reasonable course of action under the circumstances. Spirit had no pressing need for a decision, and the Court's proposal offered a sensible way for both sides to potentially avoid wasting additional time and money on this dispute. Moreover, Spirit acted unreasonably in suggesting that it had to proceed with its motion because Sandweiss would never be satisfied and would never agree to dismiss. Sandweiss had represented to the Court *on the record* that he *agreed* to the Court's proposal – a proposal that called for dismissal if the Sandweisses used the vouchers.

The Court indulged Spirit and agreed to move ahead with its motion. That was a mistake. The Court should have stayed its hand and waited 90 days before moving forward with Spirit's motion. We now know (as described below) that the

Sandweisses *were* able to personally book travel using the vouchers within the 90-day window contemplated by the Court. Thus, if the Court had enforced the 90-day cooling off period as it proposed, the parties would have avoided the bitterly-contested proceedings (also described below) that followed.

## G

The Court's decision to move ahead with Spirit's motion opened the proverbial "floodgates." In the six weeks that followed, the parties filed the following motions and briefs, totaling over one hundred pages of additional material:

- The Sandweisses filed a motion to enforce the settlement agreement (*see* ECF #17);
- Spirit filed a response to the Sandweisses' motion (*see* ECF #18);
- The Sandweisses filed a response to Spirit's motion to enforce the settlement agreement (*see* ECF #19);
- The Sandweisses filed a supplemental brief in further support of their motion (*see* ECF #20);
- Spirit filed a reply brief in further support of its motion (*see* ECF #21);
- The Sandweisses filed a reply brief in further support of their motion (*see* ECF #22); and
- Finally, both Spirit and the Sandweisses filed additional supplemental briefs on February 1, 2017. (*See* ECF ## 24, 25.)

During this period of intense briefing, Sandweiss sent an email to the address identified on the vouchers to inquire about booking travel for himself and his wife. (*See* ECF #25-3.) In that email, Sandweiss said that he was hoping to travel during

the fall or winter of 2017-18 (i.e., within the one year travel window identified by Spirit's counsel on the record) but that Spirit's website "only has schedules through September 7th." (*Id.* at Pg. ID 559.) Two weeks later, a Spirit representative told Sandweiss that Spirit did "not have fares loaded into [its] system after 9/4" and that the best the representative could do was to "keep an eye out" for later travel dates. (*Id.*) Unable to choose dates that Spirit's counsel had indicated would be available, the Sandweisses chose not to book any travel at that time.

## H

The Court set a hearing on the parties' dueling motions to enforce the settlement agreement for March 8, 2017. The Court also ordered the parties to attend a settlement conference before United States District Court Judge Laurie J. Michelson that same day – to be conducted immediately before the motion hearing. (*See* ECF #26.) The Court was hopeful that Judge Michelson would be able to do what this Court had not: get the parties over the finish line.

In late February (a couple of weeks before the scheduled motion hearing and settlement conference), the Court learned that Sandweiss and his wife had personally used the travel vouchers to book travel for themselves. It seemed to the Court that that development mooted the one dispute standing between the parties and dismissal of the action – namely, the dispute over whether the Sandweisses could transfer the vouchers to other travelers if they (the Sandweisses) could not use them. The Court

14

scheduled a telephonic conference with counsel to confirm that the action could now be dismissed. The Court should have known better.

During the conference – held on February 27, 2017 – Sandweiss confirmed that he and his wife had used the vouchers to purchase two airline tickets and that they were now willing to sign the stipulated order of dismissal and end the litigation. (*See* 2/27/17 Status Conference Tr., ECF #28 at Pg. ID 574-75.) The Court then asked Spirit whether it agreed to dismissal now that the Sandweisses had used the vouchers and agreed to execute the stipulated order of dismissal. (*See id.* at Pg. ID 575.) Spirit said "no." (*Id.*) Spirit explained that it wanted to move forward with its sanctions motion because it had spent "thousands of dollars" on legal fees that it wanted to recoup from the Sandweisses. (*Id.*)

## I

By the beginning of March, two motions remained pending before the Court: Spirit's motion to enforce the settlement agreement (and for sanctions) and Sandweiss' motion to enforce the settlement agreement (and for sanctions). (*See* ECF ## 13, 17.) The Court held a hearing on those motions on March 8, 2017. At the conclusion of that hearing, the Court provisionally concluded that Spirit was entitled to sanctions under 28 U.S.C. § 1927 ("Section 1927") against Sandweiss in his role as counsel because his failure to sign and execute the stipulated order of dismissal "unreasonably and vexatiously multiplied [the] proceedings." (3/8/17

Hearing Tr., ECF #31 at Pg. ID 745.) However, because the parties had not fully briefed the governing standard under Section 1927, the Court concluded that it would only be fair to allow Sandweiss to file an objection "bring[ing] to [the Court's] attention" any authority that sanctions were not warranted under that section. (3/8/17 Hearing Tr., ECF #31 at Pg. ID 745.) The Court then entered a written order on March 10, 2017, in which, among other things, it (1) "provisionally conclude[d] that sanctions [were] appropriate due to Sandweiss' refusal to execute a signed stipulation dismissing this action with prejudice" and (2) "provide[d] Sandweiss the opportunity to explain why sanctions [were] not appropriate under 28 U.S.C. § 1927." (ECF #30 at Pg. ID 648-49.)

The Court's decision to provisionally grant sanctions was a mistake. The Court reached that conclusion without the benefit of a brief from Sandweiss addressing Section 1927 and without taking the time to step back and take a global view of the entire course of proceedings.

## J

Sandweiss has now filed a supplemental brief in which he argues that sanctions are not appropriate under Section 1927. (*See* ECF #36.) In addition, he has filed a motion for sanctions against Spirit's counsel under Section 1927. (*See* ECF #35.) Spirit has also filed (1) a petition for attorney fees in which it asks the Court to award $8,872.50 in fees and (2) a bill of costs in which it claims that

16

pursuant to Federal Rule of Civil Procedure 54(d)(1), it is entitled to $1,276.85 in costs. (*See* ECF ## 32-33.)

## II

Spirit and Sandweiss seek sanctions against each other under Section 1927. That statute provides that

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Courts have "broad discretion" when deciding whether to award sanctions under Section 1927. *Northern Kentucky Right to Life Committee, Inc. v. Kentucky Registry of Election Finance*, 134 F.3d 371 (Table), 1998 WL 13405, at *8 (6th Cir. Jan 7, 1998); *see also Runfola & Associates, Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996) (affirming district court's refusal to award sanctions under Section 1927 and noting that "an award under [Section] 1927 is discretionary….").

After reviewing the entire course of events in this action, the Court concludes that sanctions are not warranted against Sandweiss, Spirit, or Spirit's counsel. This action became an unmitigated mess. As explained in detail above, the lawyers and the parties share the blame for that – some more than others, but none are free of

17

fault. The Court also bears some of the blame. The Court prolonged this action by failing to engage in more assertive case management and by unwisely entering a provisional ruling on Spirit's motion for sanctions.

Everyone could have, and should have, done a better job bringing this action to a close well before this point. As the blame for that failure belongs to all involved, no party is worthy of an award of sanctions.

Nor is Spirit entitled to an award of costs under Rule 54(d)(1) of the Federal Rules of Civil Procedure. That rule – which provides that costs "should be allowed to the prevailing party" – "creates a presumption in favor of awarding costs but allows denial of costs at the discretion of the trial court." *Knology, Inc. v. Insight Comm. Co., L.P.*, 460 F.3d 722, 726 (6th Cir. 2006) (quoting *Singleton v. Smith*, 241 F.3d 534, 439 (6th Cir. 2001)). In determining whether the presumption has been overcome, a district court should consider "the losing party's good faith, the difficulty of the case, the winning party's behavior, and the necessity of costs." *Id.*

Here, after considering each of these factors, the Court concludes that the presumption has been overcome and that even if Spirit could be considered a "prevailing party," it would not be entitled to its costs.[3] Most importantly, as

---

[3] It is not clear to the Court that Spirit qualifies as a "prevailing party" under the rule. Spirit did not prevail on the merits of any claim or defense. While the Court granted Spirit's motion to dismiss, at that point in the case all parties agreed that the action should be dismissed. The only remaining dispute at the time of Spirit's motion related to the vouchers – whether Spirit had to allow the Sandweisses to transfer

18

described in detail above, the conduct of Spirit and its counsel undermined trust between the parties, made the ultimate resolution of the case far more difficult than it needed to be, and contributed to unnecessary rounds of litigation. The Court acknowledges that Sandweiss engaged in similarly unhelpful conduct, but the Court simply does not deem Spirit worthy of an award of costs.[4]

In sum, for all of the reasons explained above, both Spirit's petition for attorney fees and the Sandweisses' motion for sanctions (ECF ## 32, 35) are **DENIED**, the Court **DECLINES** to award Spirit its costs (ECF #33), and Spirit's prior request for sanctions in its motion to dismiss (ECF #13) is **DENIED**. This action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated: June 6, 2017       UNITED STATES DISTRICT JUDGE

---

them (as the Sandweisses claimed) or whether Spirit would be freed from its obligation to honor the vouchers if the Sandweisses transferred them to other travelers (as Spirit claimed). Spirit has not cited any case law holding that it should be considered a "prevailing party" under these circumstances. But the Court does not decide whether Spirit was a "prevailing party." Instead, the Court assumes *arguendo* that Spirit enjoys that status. For the reasons explained above, even if Spirit is a prevailing party, it is not entitled to costs.

[4] This action was not particularly difficult and the costs claimed by Spirit were arguably necessary. If Spirit were deemed a "prevailing party," these factors could potentially weigh in favor of an award of costs. However, even if the Court weighed these factors in Spirit's favor, the Court would still decline to award Spirit its costs for the reasons stated above.

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 6, 2017, by electronic means and/or ordinary mail.

                                              s/Holly A. Monda  
                                              Case Manager  
                                              (313) 234-5113